UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERICA IRENE YEATMAN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration[1],

Defendant.

CASE NO. 12-cv-5530-JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United States Magistrate Judge, ECF No. 4). This matter has been fully briefed (*see* ECF Nos. 14, 15, 16).

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

After considering and reviewing the record, the Court finds that the ALJ erred when he failed to follow this Court's previous Order remanding this matter and failed to explain why he rejected significant probative evidence regarding the functional assessment of examining doctor, Dr. Meharg. Because an ALJ must provide an explanation when his opinions differ from the opinions of specialized, examining doctors, this matter shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff, ERICA IRENE YEATMAN, was born in 1981 and was twenty-five years old on her alleged date of disability onset of September 1, 2006 (*see* Tr. 95). She has at least a high school education (*see* Tr. 394). Plaintiff has work experience for a few months in 2006 as a barista at Starbucks, and other prior work experience; however, she has no past relevant work (*see* Tr. 98, 394).

## PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income ("SSI") pursuant to title XVI of the Social Security Act on January 22, 2007 (Tr. 95-97). After her application was denied initially and following reconsideration in 2007 (Tr. 53-56, 58-59), plaintiff's requested hearing was held before Administrative Law Judge Riley J. Atkins ("the ALJ") on September 23, 2009 (Tr. 401-27). On October 30, 2009, the ALJ issued a written decision in which he concluded that plaintiff was not disabled pursuant to the Social Security Act (Tr. 11-20). This written decision was reversed by this Court and this matter remanded on March 28, 2011(*see* Tr. 463-78).

The Appeals Council issued an Order on May 5, 2011, vacating the October 30, 2009 hearing decision, and remanding the matter to the ALJ for further administrative proceedings (*see* Tr. 481). On February 13, 2012, the ALJ held another administrative hearing (*see* Tr. 428-46), and on February 24, 2012, the ALJ issued a written decision in which he again found that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 318-400). As plaintiff did not file written exceptions, and as the Appeals Council did not otherwise assume jurisdiction of this matter, this Court may exercise jurisdiction over the ALJ's February 24, 2012 written decision. *See* 20 C.F.R. § 404.984(d).

On June 18, 2012, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's February 24, 2012 written decision (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on August 27, 2012 (*see* ECF Nos. 11, 12).

In her Opening Brief, plaintiff questions whether or not the ALJ properly rejected the opinion of Dr. Stephen Meharg, Ph.D.; (2) whether or not the ALJ properly rejected the opinion of Dr. Robert Schneider, Ph.D.; (3) whether or not the ALJ properly rejected the opinion of Dr. Leslie Postovoit, Ph.D.; and (4) whether or not the ALJ properly evaluated plaintiff's credibility and testimony (*see* ECF No. 14, pp. 4-9, 9-12, 12-14, 14-17).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting*

*Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

DISCUSSION

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining doctor's opinion is contradicted, that opinion only can "be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, *supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

1. **Whether or not the ALJ properly rejected the opinion of examining Dr. Stephen Meharg, Ph.D. regarding plaintiff's global assessment of functioning ("GAF").**

Plaintiff contends that the ALJ "did not follow Magistrate Judge Strombom's order that he address Dr. Meharg's opinion on functional limitations in regard to plaintiff's ability to work" (Opening Brief, ECF No. 14, p. 11 (*citing* Tr. 470)). For the reasons discussed further below, the Court agrees with plaintiff's argument. Defendant does not respond to plaintiff's argument (*see* Response, ECF No. 15, pp. 8-11). Instead, defendant appears to urge this Court to intuit what the ALJ may have been thinking in his written decision. However, according to the Ninth Circuit, "[l]ong-standing principles of

administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *See Bray*, *supra*, 554 F.3d at 1226-27 (*citing Chenery Corp*., *supra*, 332 U.S. at 196 (other citation omitted)).

Although the ALJ did not indicate any reliance on Dr. Kathleen S. Mayer, Ph.D.'s opinion when he rejected Dr. Meharg's GAF assessment, defendant's responsive argument entails mostly a discussion of the opinion of Dr. Mayer (*see* Response, ECF No. 15, pp. 8-11). *See also Bray*, *supra*, 554 F.3d at 1226-27 (*citing Chenery Corp*., *supra*, 332 U.S. at 196). Defendant also indicates that "the ALJ rejected Dr. Meharg's GAF assessment because it did not reflect Plaintiff's functional abilities, as discussed above" (*see* Response, ECF No. 15, p. 11). The statement by the ALJ referred to by defendant merely indicates that the ALJ assessed that plaintiff was not as functionally limited as Dr. Meharg assessed that she was. However, the ALJ should have explained why his own interpretation of plaintiff's "average functioning level" (*see* Tr. 393) was more correct than the assignment of a global assessment of functioning ("GAF") of 48 by Dr. Meharg. *See Reddick*, *supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (the ALJ must explain why his own interpretations, rather than those of the doctors, are correct)).

The ALJ included the following discussion in his written opinion:

> There is also the June 14, 2007, consultative evaluation by Stephen S. Meharg, Ph.D, cited in the remand order, where the claimant reported always forgetting things; that stress caused hysterics; that she had mild obsessive compulsive disorder; and that posttraumatic stress disorder was causing memory loss and anxiety, with this problem being due to

> something that happened when she was a child, but which she could not remember or described (sic) (internal citation to 3F). The claimant denied any history of methamphetamine abuse, a history well documented in numerous other sources; reported caring for her 3 children; and reported being estranged from her family, including the parents she has for some time been living with. Her memory was adequate in testing, but in one area of testing her responses were worse than chance, and Dr. Meharg notes significant symptom over endorsement. He also states that the claimant was relatively calm during testing, and contrasted this with her dramatic and evasive presentation. The diagnoses were of a major depressive disorder; an anxiety disorder not otherwise specified; rule out of attention deficit hyperactivity disorder; a GAF of 48; and that the claimant being capable of managing finances. This assessment and report is consistent with the objective medical records, but the GAF score is likely lower than the claimant's average functioning level.

(Tr. 392-93).

The ALJ gave no reason for his rejection of Dr. Meharg's GAF assignment. Despite the lengthy argument by defendant regarding how Dr. Mayer came to a different conclusion regarding plaintiff's GAF than did Dr. Meharg, even if Dr. Meharg's opinion as an examining physician's opinion is contradicted, that opinion still only can "be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester, supra,* 81 F.3d at 830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043). Simply identifying a contradiction is insufficient, as the ALJ must explain his resolution of any conflicting medical evidence. *See id.* As the ALJ did not provide as a reason to discount Dr. Meharg's assignment of a GAF of 48 the fact that Dr. Mayer provided a higher GAF, this Court will not attempt to intuit what the ALJ was thinking. *See Bray*, *supra,* 554 F.3d at 1226-27 (*citing Chenery Corp.*, *supra*, 332 U.S. at 196 (other citation omitted)).

The Court also concludes, based on the relevant record, that this error was harmful, as it affected the ALJ's findings regarding plaintiff's residual functional capacity ("RFC"), and also affected the ultimate finding that plaintiff was not disabled pursuant to the Social Security Act. *See Molina*, *supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki*, *supra*, 556 U.S. at 407; *Stout*, *supra*, 454 F.3d at 1054-55.

Furthermore, and perhaps most troublesome, the ALJ appears to have engaged in similar, if not identical, errors when evaluating the opinion of Dr. Meharg as he did in the written decision that was reversed by this Court previously. Here, in the written decision subject to this Court's current review, the ALJ again not only failed to provide a reason for his rejection of Dr. Meharg's assignment of a GAF of 48, but also, the ALJ appears to have erroneously evaluated Dr. Meharg's opinion regarding plaintiff's symptom over endorsement again (*see* Tr. 393). The decision by this Court remanding this case to the ALJ previously, included the following discussion regarding the opinion of Dr. Meharg:

> Specifically, plaintiff argues that although the ALJ acknowledged the GAF score of 48, he failed to state any reasons for rejecting it. Again the Court agrees.
>
> First, it should be noted that contrary to what is implied by the ALJ's findings here, Dr. Meharg did not actually find plaintiff's vagueness and tendency to over endorse symptoms was necessarily due to reasons other than her mental impairments. In fact, the part of the evaluation report discussing this issue tends toward the opposite conclusion [quoting report of Dr. Meharg]:
>
>> Overall, the data with respect to motivation is essentially inconclusive. Her performance on [psychological testing] tends to indicate adequate effort on this memory task, and her normal performance across virtually all subtests of the

> Wechsler Memory Scale also indicates no overt attempt at symptom exaggeration. In contrast, Ms. Yeatman's somewhat dramatic and evasive presentation during the interview combined with a fairly obvious tendency toward symptom overendorsement on the [additional psychological testing] indicates, at a minimum, an anxious plea for help and a strong preoccupation with mood and cognitive symptoms even if these tend not to be supported by more objective analysis. In most such cases, the patient's complaints of cognitive disturbance can most likely be attributed to a psychiatric pseudo-dementia. Unfortunately, the somewhat diffuse pattern of her symptoms defies easy diagnostic categorization . . . .

> (internal citation to Tr. 187). The ALJ also is incorrect in stating that Dr. Meharg did not address plaintiff's ability to work, since, as noted above, a GAF score is representative, albeit subjectively, of the claimant's 'overall level of functioning,' is 'relevant evidence' of the claimant's mental functional abilities and, when it falls with[in] the range of 41 to 50, indicates serious symptoms or serious impairment in social occupational or school functioning. Therefore, at least to this extent, Dr. Meharg did address functional limitations in regard to plaintiff's ability to work.

(Tr. 469-70) (some internal citations omitted).

For the reasons stated, and based on the relevant record, the Court concludes that the ALJ again erred when reviewing the medical opinion of Dr. Meharg; that the errors were harmful; and that this matter therefore shall be reversed and remanded again to the Commissioner for further administrative proceedings.

2. **Whether or not the ALJ properly rejected the opinion of Dr. Robert Schneider, Ph.D**.

The ALJ included multiple paragraphs of discussion regarding the opinion of Dr. Robert Schneider, Ph.D. (*see* Tr. 393). The ALJ assessed that the evaluation by Dr. Schneider provided diagnoses virtually identical to the other evaluations, but that it

included different predictions (*see* Tr. 393). The ALJ also found that the different predictions by Dr. Schneider appeared "to be based on, as described by Dr. Meharg, the claimant's dramatic and evasive presentation," and found them to be contradicted by plaintiff's activities of daily living and negotiation of various benefit programs (*see id.*).

The ALJ's assessment of Dr. Schneider's opinion has some dependence on the ALJ's characterization of Dr. Meharg's opinion, and the Court has concluded that the ALJ's implications regarding the meaning and import of some of Dr. Meharg's treatment notes are not supported by substantial evidence in the record, *see supra*, section 1 (*see also* Tr. 469-70). This Court also already has concluded that this matter must be reversed and remanded for further consideration of Dr. Meharg's medical opinion, *see supra*, section 1. For these reasons, and based on the relevant record, the Court concludes that Dr. Schneider's opinion should be evaluated anew following remand of this matter.

3. **Whether or not the ALJ properly evaluated plaintiff's credibility and testimony**.

Defendant argues that the law of the case precludes reexamination of the ALJ's findings regarding plaintiff's credibility (*see* Response, ECF No. 15, p. 14-15). Defendant argues that because this Court previously concluded that the ALJ had not erred in his previous credibility determination, that this Court should uphold the ALJ's credibility determination in his new February 24, 2012 written decision (*see id.*). However, plaintiff argues persuasively that she was afforded a new hearing, at which she provided new testimony, subsequent to this Court's decision upholding the ALJ's credibility determination (*see* Reply, ECF No. 16, p. 7 (*citing* Tr. 428-446)).

As summarized by the Ninth Circuit, the law of the case doctrine posits "that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case . . . .'" *United States v. Park Place Associates*, 563 F.3d 907, 925 (9th Cir. 2009) (*quoting Arizona v. California*, 460 U.S. 605, 618 (1983)) (other citations omitted). This discretionary doctrine is founded on the policy that litigation should come to an end. *Earl Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002) (*quoting Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc)). The Ninth Circuit has noted the following exceptions to the law of the case doctrine: "'(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'" *Id.* (*quoting Jeffries, supra*, 114 F.3d at 1489).

The Court concludes that the third exception applies to the matter herein. *See id.* Subsequent to this Court's Order reversing the ALJ's October 30, 2009 written decision and remanding this matter for further administrative proceedings (*see* Tr. 464-78), plaintiff was afforded another administrative hearing on February 13, 2012 (*see* Tr. 428-46). The ALJ explicitly indicated in his 2012 written decision that at her hearing after remand, plaintiff "described a medication overdose following the prior hearing" (*see* Tr. 390; *see also* Tr. 433-35). Based on the relevant record, including plaintiff's subsequent hearing testimony, the Court concludes that substantially different evidence was adduced at plaintiff's subsequent hearing (*see* Tr. 431-46).

Because of the substantially different evidence adduced at plaintiff's subsequent hearing; the relevant record; and the discretionary nature of the law of the case doctrine, the Court declines to apply the law of the case doctrine to the credibility findings of the ALJ subject to review herein. *See Park Place Associates*, *supra*, 563 F.3d at 925; *Earl Old Person*, *supra*, 312 F.3d at 1039.

However, the Court already has concluded that the ALJ erred in his review of the medical evidence, *see supra*, section 1, and a determination regarding a plaintiff's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, for this reason, and based on the relevant record, including plaintiff's testimony and the ALJ's written decision, the Court concludes that plaintiff's allegations and credibility should be assessed anew following remand of this matter.

4. **Whether or not the ALJ properly rejected the opinion of Dr. Leslie Postovoit, Ph.D**.

Plaintiff complains that the ALJ again failed to evaluate properly the opinion of Dr. Postovoit (*see* Opening Brief, ECF No. 14, pp. 12-14). Plaintiff also points out that this Court previously decided this issue in favor of plaintiff, thus implicating the law of the case doctrine (*see* Reply Brief, ECF No. 16, pp. 4-6). Although the law of the case doctrine is not applicable to the ALJ's determination regarding plaintiff's credibility, there does not appear to be a reason to fail to apply it to the ALJ's similar treatment of the identical opinion of Dr. Postovoit in his subsequent written decision subject to this Court's review. Plaintiff argues that the ALJ again ignored and failed to credit fully Dr.

Postovoit's opinion as reflected in moderate limitations opined in Section I of her opinion. Application of the law of the case doctrine to the ALJ's treatment of the opinion of Dr. Postovoit would require this Court to conclude again that the ALJ erred in his review of Dr. Postovoit's opinion, as this Court's Order reversing and remanding the ALJ's prior decision included the following:

> As discussed above, the ALJ found Dr. Postovoit's functional assessment to be consistent with a limitation to unskilled work involving the performance of routine, repetitive tasks (internal citation to Tr. 18). As pointed out by plaintiff, however, Dr. Postovoit found plaintiff had additional moderate limitations in h[er] ability to:
>
> - Work in coordination with or proximity to others;
> - Complete a normal workday and workweek;
> - Perform at a consistent pace;
> - Accept instructions and respond appropriately to criticism;
> - Get along with coworkers or peers; and
> - Respond appropriately to changes in work setting.
>
> (internal citation to 203-04 [Section I]). In addition, Dr. Postovoit opined that plaintiff would 'have difficulty working' with maintaining attention and concentration 'for extended periods if the work is more detailed or has high production values,' would 'work better' with smaller groups and would 'perform best' in settings that had 'reliable work expectations and schedules.' (internal citation to Tr. 205). Clearly, these limitations are not encompassed by the ALJ's residual functional capacity assessment. Accordingly, here too, the ALJ erred. The Court, however, does agree with defendant that there is no evidentiary support in the record for the claim that a moderate limitation in the ability to complete a normal workday and workweek and perform at a consistent pace, establish plaintiff would miss at least two days of work per month and thus could not sustain competitive employment.

(Tr. 470-71).

However, this Court already has determined that the medical evidence and plaintiff's allegations and testimony must be evaluated anew, *see supra*, sections 1 and 3.

Therefore, for this reason, and based on the relevant record, the Court concludes that the opinion of Dr. Postovoit should be evaluated anew following remand of this matter. Following remand, Dr. Postovoit's limitations as opined in Section I of her opinion should be included explicitly into the residual functional capacity ("RFC") of plaintiff and should be included explicitly into any hypothetical presented to any vocational expert, or should be rejected explicitly. This aspect of Dr. Postovoit's opinion should be discussed in the ALJ's written decision.

5. **This matter should be reversed and remanded to the Commissioner for further consideration, not for a direction to award benefits**.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra*, 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate in order to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's credibility and residual functional capacity. *See Sample*, *supra*, 694 F.2d at 642.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

Plaintiff should be afforded a new hearing and a new decision on all issues *de novo*.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 5th day of March, 2013.

J. Richard Creatura
United States Magistrate Judge